DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Kevin Pruiett, appeals from his conviction in the Summit County Court of Common Pleas for domestic violence. We affirm.
 I. {¶ 2} Mr. Pruiett met the victim, D.H., in February 2003, and soon after they started a romantic and sexual relationship. D.H. and Mr. Pruiett began to live together, and Mr. Pruiett even took responsibility for some of the bills; the electric and telephone bills for the residence were in his name.
 {¶ 3} This appeal arises from a series of altercations between Mr. Pruiett and D.H. that occurred on or about July 12, 2003. On August 20, 2003, Mr. Pruiett left the Oriana House, which is where he was staying at the time, and appeared at D.H.'s home to take a car that he and D.H. had shared together. Among the people present at D.H.'s home at that time were her sisters and her father.
 {¶ 4} D.H. called the police to report Mr. Pruiett's presence and her injuries, upon her father's insistence. The police arrived to D.H.'s home, and interviewed her. During the course of the interview, D.H. showed the police scalding marks on her chest and stomach areas, stating that Mr. Pruiett caused these marks by throwing hot water on her the month before. D.H. also informed the police that around that same time Mr. Pruiett punched her in the eye, for which she sought medical attention. She stated, however, that she had explained to the hospital staff that her nephew had caused the eye injury by accidentally kicking her. In addition, D.H. informed the police that she did not come forward sooner out of fear.
 {¶ 5} D.H. went to the police station to be interviewed and to have pictures taken of her injuries. A temporary protection order was issued against Mr. Pruiett on behalf of D.H. as a result of this matter.[1]
 {¶ 6} On September 2, 2003, the Summit County Grand Jury indicted Mr. Pruiett of the following: (1) one count of felonious assault, in violation of R.C. 2903.11(A)(1), a second degree felony; (2) one count of domestic violence, in violation of R.C.2919.25(A), a fifth degree felony;[2] and (3) intimidation of crime victim or witness, in violation of R.C. 2921.04(B), a third degree felony. Mr. Pruiett pled not guilty to the charges.
 {¶ 7} A jury trial was held on December 9-11, 2003. On December 11, 2003, a jury found Mr. Pruiett not guilty of felonious assault and intimidation of crime victim or witness, but guilty of the domestic violence count. The parties stipulated to the fact that Mr. Pruiett was previously convicted of domestic violence, and the jury also found the same. Mr. Pruiett was sentenced accordingly. This appeal followed.
 {¶ 8} Mr. Pruiett timely appealed, asserting four assignments of error for review. We address Mr. Pruiett's second and third assignments of error together to facilitate review.
 II. A. First Assignment of Error
"The conviction of the appellant for the charge of domestic violence in this case is against the manifest weight of the evidence and should be reversed[.]"
 {¶ 9} In his first assignment of error, Mr. Pruiett contends that his conviction for domestic violence is against the manifest weight of the evidence. We disagree.
 {¶ 10} A manifest weight challenge questions whether the State has met its burden of persuasion. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v. Thompkins
(1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 11} Mr. Pruiett argues that the jury in this case could not have found that he had caused the physical harm to the victim on July 12, 2003, in accordance with R.C. 2919.25(A). R.C.2919.25(A) provides, "No person shall knowingly cause or attempt to cause physical harm to a family member or household member."[3] "Physical harm" to persons is defined by statute as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01.
 {¶ 12} D.H. testified regarding a number of incidents in which Mr. Pruiett had physically harmed her. D.H. testified as to one day in July 2003 when she and Mr. Pruiett were to go somewhere together. She had decided not to go out and instead began to clean her bedroom. D.H. testified that Mr. Pruiett came into the bedroom to inquire about her decision not to go out, and after the two exchanged a few words about the subject, that Mr. Pruiett spit food in her face and began "whooping" her with a belt and made her leave with him. She stated that as she walked down the steps, he pushed her.
 {¶ 13} D.H. then proceeded to testify about events that occurred later that day. She testified that later that evening, Mr. Pruiett got angry at her, started to "cuss [her] out" over a money issue, "called [her] all kinds of bitches and ho's [sic.]," and told her he was leaving. She testified that despite these remarks, Mr. Pruiett insisted that they go out together. D.H. stated that she agreed to go because "[she] didn't want to argue with him * * * [b]ecause he was already agitated." D.H. testified that eventually they returned to their house, but that Mr. Pruiett didn't enter the house with her. D.H. testified that some time later that evening, she heard a car door slamming in the driveway, and went outside to find Mr. Pruiett sitting in his car with the engine running. D.H. testified that she turned the car off because she thought he was asleep, but that Mr. Pruiett actually was not asleep. D.H. then testified that she went back into the house and that Mr. Pruiett followed her in; as he followed her through the door opening, he hit her "upside [the] head" with his hand D.H. asserted that he continued to hit her, and when they entered the house he pushed her onto the couch and started to beat her. D.H. explained that he started to hit her with glass objects, a plastic toolbox, and ceramic lamps, and that he also kicked her and stomped her.
 {¶ 14} D.H. testified that at some point during this incident he stopped hitting her, walked into the kitchen and called her into the kitchen. D.H. stated that she went into the kitchen "[b]ecause [she] was scared of what he would do if [she] didn't. [She] was just trying to cooperate with him so he would just quit and not do anything else." Mr. Pruiett then instructed her to stand by the refrigerator and that if she "valued [her] life [she] wouldn't move." D.H. stood there, as Mr. Pruiett took a coffee cup and filled it with hot tap water and put it in the microwave to heat the water. D.H. testified that Mr. Pruiett then proceeded to tell D.H. that he would kill her, her father, and her children, and it would be easy for him to get away with it. D.H. testified that Mr. Pruiett then pulled a knife on her as he continued to speak, removed the coffee cup from the microwave, and sat it on the stove.
 {¶ 15} D.H. testified that he then lit and smoked part of a cigarette; but as he started to walk out of the kitchen, he backed up, grabbed the cup, and made D.H. position her face. D.H. stated that she had pleaded with Mr. Pruiett not to throw the water in her face, and that instead he threw the water at her chest area. D.H. stated that "[i]t stung real bad [sic.][,]" and that her burns started to blister. D.H. testified that she did not immediately seek treatment for the burns and had reservations about telling the doctors the source of the burns; she was afraid of that if Mr. Pruiett was arrested for the incident, he may seek revenge on her. However, she did testify that she self-medicated the burns with cocoa butter and a bottle of aloe vera gel. She testified that her son had seen the chest burns, but that she explained to her son that she had spilt tea on her chest.
 {¶ 16} D.H. testified that on July 19, 2003, approximately a week after the burning incident, she went to the hospital to seek treatment for an eye injury she asserted Mr. Pruiett caused. D.H. testified that on her way to the emergency room with Mr. Pruiett, Mr. Pruiett questioned her as to how she would explain the cause of the eye injury; she stated that she would give the doctors a different reason and would not tell them that Mr. Pruiett had caused the injury. While Mr. Pruiett drove her to the emergency room and walked in with her, he left when someone attended to her. D.H. testified that she wanted to hide the truth about how she sustained the eye injury, and instead told the doctors that her son had accidentally kicked her in the eye. D.H. stated that she informed the doctor of both her eye injury and her chest burns. D.H. also testified that she told her niece and her sister the truth about these incidents sometime at the end of July or beginning of August 2003, but that she was hesitant to because Mr. Pruiett was not completely moved out of the house by that time.
 {¶ 17} D.H.'s sister, Barbara Baker ("Baker"), testified that she had noticed the burns on D.H.'s chest. Baker testified that she insisted that D.H. do something about the situation, because if she stayed involved with Mr. Pruiett, greater injuries may occur. However, Baker's testimony corroborated the fact that D.H. was afraid to approach the police about the matter, stating that she did not call the police herself because "[she] felt [her] sister needed to empower herself. * * * She was very fearful of him. Her emotional and mental state was a wreck. And I wanted her to do this for herself, to take back some control that she felt she didn't have." Baker testified that when she spoke to Mr. Pruiett later and confronted him about D.H.'s chest burns, Mr. Pruiett apologized to her, and stated that he was trying to "make it right."
 {¶ 18} After a careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Mr. Pruiett guilty of domestic violence. See Otten, 33 Ohio App.3d at 340. A jury could reasonably conclude that Mr. Pruiett had caused the injuries in this case.
 {¶ 19} Mr. Pruiett argues that the victim was not a credible witness, asserting that she provided several conflicting accounts about the cause of her injuries. In addition to pointing out D.H.'s explanation for her eye injury, Mr. Pruiett notes that D.H. informed certain people that her chest burns resulted from her own accidental spill of tea on her chest. Although conflicting testimony was presented with respect to the victim's statements regarding the incidents in question, we will not overturn the verdict because the jury chose to rely on other testimony and reasonable inferences. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. We are not in a position to speculate on the reasons for which the victim may have not sought medical treatment for the burns immediately, but a reasonable juror could find D.H.'s reasons for providing different explanations for her injuries credible and probable. We do note that many times in domestic violence and assault cases, the victims are hesitant to act against their attacker out of fear. See Cleveland Hts. v.Reed (Oct. 12, 1995), 8th Dist. No. 67714.
 {¶ 20} Mr. Pruiett insists that, were the trial court to allow D.H.'s former boyfriend, Albert Wade ("Wade"), to testify, his testimony would have refuted the victim's testimony and damaged her credibility, and would produce "sufficient doubt" as to Mr. Pruiett's guilt. Mr. Pruiett blames the victim's claimed inconsistent statements and the trial court's refusal to allow Wade to testify, asserting that the jury lost its way and created a manifest miscarriage of justice. During trial, Wade appeared at a lunch break and identified himself to the defense counsel, who then moved the trial court to allow Wade to testify. The court did not allow Wade to testify, and as such, this Court may not engage in pure speculation as to what Wade's testimony would have shown, and especially what impact it would have had on the finder of fact. See State v. Stalnaker, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶ 9.
 {¶ 21} Mr. Pruiett argues that the victim did not seek medical attention for her burns for nearly two weeks after the incident occurred, that there was no documented evidence that the victim mentioned the burns or their cause to any medical personnel. However, the fact that the victim may not have mentioned the burns or their cause, and the fact that she did not immediately seek treatment for them, is immaterial to the issue of whether Mr. Pruiett, in fact, caused these burns. Moreover, the evidence presented and admitted at trial corroborates the fact that the victim did in fact experience burns to her chest, and Mr. Pruiett does not contest the fact that the victim actually had sustained burns to her chest.
 {¶ 22} Based upon the foregoing, we find that Mr. Pruiett's conviction for domestic violence was not against the manifest weight of the evidence. Accordingly, Mr. Pruiett's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court incorrectly denied appellant's motion for acquittal in violation of criminal rule 29; specifically, there was not sufficient evidence to prove the offense of domestic violence beyond a reasonable doubt."
 Third Assignment of Error
"The trial court erred to the prejudice of appellant and in violation of Criminal Rule 29(a), Article I, section 10 of the ohio constitution and the Fourteenth Amendment to the constitution of the united states, when it denied appellant's motion for acquittal for domestic violence."
 {¶ 23} In his second and third assignments of error, Mr. Pruiett contends that the trial court erred when it denied his motion for acquittal. Mr. Pruiett avers that the evidence presented at trial was insufficient to sustain a conviction for domestic violence.
 {¶ 24} We observe that Mr. Pruiett did not properly raise a challenge to the sufficiency of the evidence and to the trial court's denial of his Crim.R. 29 motion for acquittal. Mr. Pruiett's counsel moved for acquittal pursuant to Crim.R. 29 at the close of the State's evidence and also renewed the motion at the close of all the evidence, which the court denied in both instances. However, when counsel initially raised the motion, he proceeded to argue specific grounds for the motion. Particularly, counsel argued specifically with respect to the felonious assault and intimidation charges, and did not raise a challenge to the domestic relations charge in his argument.
 {¶ 25} It is a fundamental principle of appellate review that a court will not consider an error that an appellant was aware of, yet failed to bring to the attention of the trial court.State v. Awan (1986), 22 Ohio St.3d 120, 122; State v.Williams (1977), 51 Ohio St.2d 112, 117. Moreover, appellate courts in Ohio have held that if a defendant sets forth specific grounds in his motion for acquittal, he or she waives review of all grounds not specified. See State v. Swanner (May 18, 2001), 4th Dist. No. 00CA2732; State v. Cayson (May 14, 1998), 8th Dist. No. 72712, citing U.S. v. Dandy (C.A. 6, 1993),998 F.2d 1344, 1356-57 (stating that "[a]lthough specificity of grounds is not required in a [Crim.R. 29] motion, * * * all grounds not specified are waived" (Citations omitted.)).
 {¶ 26} Because Mr. Pruiett's counsel set forth specific grounds in his Crim.R. 29 motion, but did not include any argument regarding the domestic violence charge, Mr. Pruiett has waived any challenge to the sufficiency of the evidence with respect to his conviction for domestic violence. Therefore, Mr. Pruiett's second and third assignments of error are overruled.
 C. Fourth Assignment of Error
"Appellant was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Article I, section 10 of the Ohio Constitution[.]"
 {¶ 27} In his fourth assignment of error, Mr. Pruiett contends that he was denied effective assistance of trial counsel by counsel's failure to preserve the issue of the trial court's denial of his motion to allow a witness, who was untimely presented to the court testify at trial. Mr. Pruiett's contentions lack merit.
 {¶ 28} A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. SeeMcMann v. Richardson (1970), 397 U.S. 759, 771, 25 L.Ed.2d 763,773, and fn.14. A two-step process is employed in determining whether the right to effective counsel has been violated:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 29} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160,174. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245-M.
 {¶ 30} This Court does not need to address these elements in any particular order; if we conclude that prejudice to the defendant did not result from defense counsel's actions or omissions, then we need not address whether counsel's actions or omissions were actually deficient. See Bradley,42 Ohio St.3d at 143.
 {¶ 31} In the instant case, Mr. Pruiett's counsel did not proffer Wade's testimony at trial. Mr. Pruiett's counsel and the trial court discussed on the record the court's refusal to allow Wade to testify at the last minute during trial. The court reasoned that since Wade had approached counsel during the lunch hour at trial, counsel not knowing of him or his identity, Wade was a surprise witness. The court also noted that, based on defense counsel's explanation of Wade's proposed testimony, Wade did not appear to have any direct knowledge of the facts and circumstances of the instant case, and that Wade's testimony would only serve to collaterally impeach D.H.'s testimony with extrinsic evidence.
 {¶ 32} We note that Mr. Pruiett's actual contention is that defense counsel's mere failure to object to the court's refusal to allow Wade to testify, thereby failing to preserve the issue for appeal, resulted in ineffective assistance of trial counsel. However, Mr. Pruiett essentially bases his ineffective assistance of counsel claim on speculation as to what Wade's testimony would be. See State v. Ramos, 9th Dist. No. 21286, 2003-Ohio-2637, at ¶ 22. Where this Court has "absolutely no means of determining what [a witness'] testimony would have, in fact, included * * * we refuse to engage in speculation and supposition as to what the extent of that testimony might have shown." State v. Hodge
(Jan. 3, 2001), 9th Dist. No. 3072-M. Speculation as to what additional evidence might have revealed is insufficient to succeed on an ineffective assistance of counsel claim. See id.;Ramos at ¶ 22. Because this Court has no way of knowing in fact what Wade would have testified to at trial, we cannot conclude that Wade's failure to testify, which Mr. Pruiett's counsel did not proffer, prejudicially affected Mr. Pruiett and would have a reasonable probability of changing the outcome of his trial. SeeBradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 33} This Court finds that Mr. Pruiett has failed to demonstrate that his counsel's actions or omissions prejudiced him at trial. Accordingly, Mr. Pruiett's fourth assignment of error is overruled.
 III. {¶ 34} Mr. Pruiett's first, second, third, and fourth assignments of error are overruled. Mr. Pruiett's conviction the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Boyle, J., concur.
[1] There are other persons named on the temporary protection order. However, their identities are not relevant to the instant case.
[2] Pursuant to the version of R.C. 2919.25 in effect at the time this offense was committed, "[i]f the offender previously has pleaded guilty to or been convicted of domestic violence, * * * a violation of division (A) or (B) of this section is a felony of the fifth degree[.]" R.C. 2919.25(D). The parties stipulated to the fact that Mr. Pruiett has a prior conviction for domestic violence.
[3] The parties do not contest the fact that Mr. Pruiett had lived with the victim at the time that the offenses occurred, and that he was a "household member" per R.C. 2919.25(A).