[Cite as *State v. Fletcher*, 2017-Ohio-9207.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 17CAA030016 |
| | : | |
| BRENDA J. FLETCHER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of Common Pleas, Case No. 16CR-I-10-0543


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      December 21, 2017


APPEARANCES:

For Plaintiff-Appellee:

CAROL HAMILTON O'BRIEN
DELAWARE CO. PROSECUTOR
KIMBERLY E. BURROUGHS
140 North Sandusky St.
Delaware, OH 43015

For Defendant-Appellant:

APRIL F. CAMPBELL
OHIO PUBLIC DEFENDER OFFICE
545 Metro Place S., Ste. 100
Dublin, OH 43017

*Delaney, P.J.*

{¶1}   Appellant Brenda J. Fletcher appeals from the February 28, 2017 Judgment Entry on Sentence of the Delaware County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   In October 2012, appellant was employed by Aramark and was injured at work.  She filed a claim for the workplace injury with the Ohio Industrial Commission, generating a claim for workers' compensation.  The claim was assigned a claim number with the Bureau of Workers' Compensation (BWC).

{¶3}   Aramark is a certified self-insured employer.  The company uses a Third-Party Administrator (TPA) to administer its workers' comp claims, instead of BWC.  The TPA, in this case Sedgwick, keeps filings related to the claim and makes courtesy copies available to BWC.  Additionally, self-insured employers such as Aramark pay a fee to BWC to help manage claims; part of that fee covers fraud investigation.

{¶4}   In this case, appellant's workplace injury rendered her unable to work, thus she requested and received "temporary total compensation."  Appellant was required to complete a C-84 form requesting payment while she was off work recuperating from the injury.  A medical doctor certified appellant was temporarily and totally disabled and unable to work.

{¶5}   On February 25, 2014, appellant completed a C-84, one of an ongoing series of such forms, certifying she was not currently working in any capacity and that the last time she worked was October 21, 2012.

{¶6} The form states in part, "Working includes full or part-time, self-employment, income-producing hobbies, commission work, or unpaid activities that are not minimal and directly earn income for someone else." Further, directly above appellant's signature, the form states:

* * * *.

I understand I am not permitted to work while receiving temporary total compensation. I have answered the foregoing questions truthfully and completely. I am aware that any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by BWC or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine, imprisonment, or both.

* * * *.

{¶7} This February 25, 2014 C-84, signed by appellant, was entered at trial as appellee's exhibit 2.

{¶8} Eric Wichner is a private investigator who works for a firm hired by Sedgwick to investigate disability and workers' compensation issues. Here, Wichner was advised appellant was purportedly unable to work and was asked to investigate. On April 4, 2014, Wichner followed appellant from her residence to Clancy's Pub in Delaware, Ohio. Wichner entered the pub, sat at the end of the bar for two to three hours, and used his phone to record video of appellant's activities inside the bar. Wichner observed appellant

pour several buckets of ice into a receptacle at the end of the bar.  He observed appellant behind the bar serving drinks and talking to customers.

{¶9}   Wichner returned to Clancy's Pub on April 11, 2014 around 5:00 p.m. Appellant was again behind the bar.  Wichner ordered several drinks from appellant and paid her.  He again taped appellant's activities with his phone.

{¶10} Wichner's videotape of his interaction with appellant, minus audio, was entered at trial as appellee's exhibit 1.  Wichner acknowledged there were two days during his surveillance of appellant that he did not observe any activity.

{¶11} Aramark requested BWC to investigate potential fraud in appellant's case and Agent John Koehl, a BWC fraud analyst, testified about the investigation.  Aramark provided information that appellant had a lower-back injury and the company had paid her temporary total compensation.  Aramark alleged, though, that appellant was working at Clancy's Pub in violation of the terms of that compensation.

{¶12} Koehl performed an initial background check on appellant and observed her BMV photo, home address, and vehicle registration.   He noted that during his investigation, appellant moved to a new residence.

{¶13} Koehl surveilled appellant several times at Clancy's Pub.  On May 27, 2015, Koehl entered the pub and observed appellant seated at the end of the bar.  She got up, walked around the bar, and asked if she could get him anything.  Koehl asked to use the restroom and observed the layout of the pub.  Koehl asked appellant whether the pub had a takeout menu and she responded no, "but they made good pizza."  (T. 199-200). Dave Weiser, the pub owner and appellant's boyfriend, was also present.[1]   Appellant

---

[1] Weiser reportedly lives above the pub.

again asked Koehl if she could get him anything and he joked that he would like a whiskey but had to drive. Koehl then left the pub.

{¶14} On June 5, 2015, Koehl looked for appellant at the new residence but didn't see her vehicle, so he returned to her former address and observed appellant placing lamps in her vehicle. Koehl watched her leave, drive to Clancy's Pub, and enter the pub. Koehl and another agent entered the pub to find appellant and Weiser both behind the bar. Weiser asked if he could get the agents anything and they asked to order food; Weiser suggested soft pretzels and they agreed. Weiser briefly left to get the pretzels and appellant in the meantime walked around behind the bar to wait on another customer. She served the customer a drink, took payment for the drink, and cashed it out at the register.

{¶15} The agent accompanying Koehl asked appellant for a Diet Pepsi. Appellant took a Diet Coke out of the cooler and asked the agent if she wanted a glass of ice with the soda. The agent said she preferred Diet Pepsi but appellant responded they sold Coke products.

{¶16} On July 31, 2015, agents followed appellant all day, beginning with a doctor's appointment in the morning, to obtain "a day in the life" footage. They followed appellant throughout the day and to Clancy's Pub in the evening. Weiser was present, seated at the end of the bar; appellant was behind the bar; and the pub was almost empty of customers. Appellant waited on the agents, brought drinks and pizza, and cashed out their payment. Appellant also made the pizza she served.

{¶17} On October 9, 2015, agents returned to Clancy's Pub. There were a few customers present; appellant served drinks, brought pizza, and took payment. The

agents conversed with appellant and she told them she had been a bartender her whole life; she comes in on Mondays to varying numbers of patrons; she works September through May at the pub and depends upon the money she makes to get her through the summer when school is not in session;[2] and she makes more on Saturday nights than most people make in a week.

{¶18} Koehl's video of appellant's activity was entered at trial as appellee's exhibit 3.

{¶19} Appellant was charged by indictment with one count of perjury pursuant to R.C. 2921.11(A), a felony of the third degree [Count I];[3] one count of workers' compensation fraud pursuant to R.C. 2913.48(A)(1), a felony of the fourth degree [Count II]; one count of workers' compensation fraud pursuant to R.C. 2913.48(A)(2), a felony of the fourth degree [Count III]; and one count of theft pursuant to R.C. 2913.02(A)(3), a felony of the fourth degree [Count IV]. Appellant entered pleas of not guilty and the matter proceeded to trial by jury.

{¶20} Prior to trial, the parties entered the following stipulation:

> * * * *.
>
> [Appellant] was injured during her employment at Aramark on October 21, 2012. At all relevant times, [appellant] was medically qualified to receive Workers' Compensation Benefits for the payment of medical bills and temporary total compensation based on that

---

[2] Clancy's Pub is reportedly busier when nearby Ohio Wesleyan University is in session.
[3] The perjury count arose from appellant's alleged misrepresentations at a deposition in June 2014 regarding whether or not she was working. At trial, the lawyer who took appellant's deposition testified appellant stated under oath that she had not "worked" since October 2012.

injury. She has received those benefits. During the time period of April 1, 2014 through December 31, 2014, [appellant] received $10,131.89 in temporary total compensation. The payments during this period are the subject of the dispute in this case.

* * * *.

{¶21} Appellant moved for judgments of acquittal pursuant to Crim.R. 29(A) at the conclusion of appellee's case and at the close of all of the evidence, and the motions were overruled. The jury found appellant not guilty upon Counts I and III and guilty upon Counts II and IV, with the additional finding upon both counts that the value of the benefits received was $7,500 or more.

{¶22} Post-trial, appellant filed a Motion for Judgment of Acquittal pursuant to Crim.R. 29(C). Appellant raised two arguments in this motion: 1) her activities did not qualify as "work" sufficient enough to disqualify her for temporary total disability benefits, and 2) appellant never made any false statements or misrepresentations to obtain the benefits in question; i.e., the payments from Aramark were "* * *either a gift, or alternatively, they established a bailment or constructive trust with [appellant]." Appellee responded with a motion in opposition, and the trial court denied the post-trial motion for acquittal by judgment entry on February 16, 2017.

{¶23} The parties agreed that the workers' compensation fraud count (Count II) merged with the theft count (Count IV), and appellee elected to sentence upon Count II. The trial court sentenced appellant to a community-control sanction of two years.

{¶24} Appellant now appeals from the judgment entry of sentence entered February 28, 2017.

{¶25} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶26} "FLETCHER'S WORKERS' COMPENSATION FRAUD AND THEFT BY DECEPTION CONVICTIONS SHOULD BE REVERSED, BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT AND WEIGHS MANIFESTLY AGAINST HER CONVICTION[:]

{¶27} "I. FLETCHER DID NOT ACT WITH THE CULPABILITY REQUIRED FOR BWC FRAUD.  AND BECAUSE SHE WAS NOT 'WORKING,' SHE WAS ENTITLED TO THE COMPENSATION ARAMARK PAID HER."

{¶28} "II.  FLETCHER DID NOT COMMIT THEFT, BECAUSE SHE WAS ENTITLED TO WHAT SHE RECEIVED.  AND BECAUSE ARAMARK WAS NOT DECEIVED, THERE WAS NO THEFT BY DECEPTION."

**ANALYSIS**

I., II.

{¶29} Appellant's two assignments of error are related and will be considered together.  Appellant argues her convictions are against the manifest weight and sufficiency of the evidence.  We disagree.

{¶30} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶31} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶32} Appellant was found guilty upon one count of workers' compensation fraud pursuant to R.C. 2913.48(A)(1), which states, "No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [r]eceive workers' compensation benefits to which the person is not entitled[.]"  Appellant was also found guilty of theft pursuant to R.C. 2913.02(A)(3), which states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]"

{¶33} Appellant first argues her convictions are against the manifest weight and sufficiency of the evidence because she had no "notice" that her activity at the pub would

disqualify her from receiving temporary total compensation because the last C-84 she signed was dated February 2014. The parties stipulated appellant was medically qualified to receive temporary total compensation benefits; the issue at trial was whether she acted with purpose to defraud or knowing that she was facilitating a fraud. The terms of appellant's temporary total compensation specify that she is not permitted to work; appellant acknowledged this requirement, and attested that she was not working, when she signed the C-84 on February 25, 2014.

{¶34} Appellant's second argument, that appellee failed to establish she was "working," is inextricable from the first: the issue posed by this case is simply whether appellant "worked" at Clancy's Pub, thereby disqualifying her for the benefits which she deceptively accepted.

{¶35} The trial court instructed the jury as follows regarding workers' compensation fraud and the definition of "work:"

* * * *.

Ohio law does not allow an injured worker to receive TTD [temporary total disability] benefits once that person has returned to work.

Work is generally considered to be labor, including services, provided in exchange for pay. It can include full-time labor, part-time labor, self-employment labor, labor that is compensated through commission payments, and hobbies that generate income.

Work can also include unpaid activities that are not minimal and that directly generate income for someone else. The enterprise

that earns income from another person's unpaid labor need not be profitable in order for the person's income-generating labor to be considered work.

Conversely, if the activities of the recipient of TTD are minimal and relate only indirectly to generating income, that person may receive TTD benefits for the period in which he or she is performing those activities.

In deciding whether an activity is minimal, you should consider the scope and duration of the activity, its frequency and regularity, the character and significance of the activity, the amount of income generated by the activity, and the physical and mental rigor of the activity.

Activity directly generates income for someone else when, but for that activity, the income earned by that other person would have been less.

* * * *.

T. II, 315-316.

{¶36} Appellee's uncontroverted evidence established appellant was at Clancy's Pub on April 4, April 11, May 27, June 5, July 31, and October 9. On those dates, appellant was at various times observed behind the bar, serving drinks and food, cashing out customers at the register, directing patrons to the restroom, preparing food, dumping ice buckets, and describing menu items to patrons. Appellant stated to undercover investigators that she made enough working at the bar during the school year to get her

through the summer months, and that she makes more on a Saturday night than most people make in a week. Appellee's evidence consisted of the testimony of investigators and compelling video of appellant in action inside the pub.

{¶37} Appellant's arguments that she is not culpable for her actions, and that she was entitled to benefits because she did not "work," are simply unavailing in light of appellee's evidence, which is unambiguous and conclusive: appellant was demonstrably "working" in the pub. She was not merely in the presence of the pub; she was not merely promoting the goodwill of the pub. *State ex rel. Honda of Am. Mfg. Co. v. Indus. Comm.*, 113 Ohio St.3d 5, 2007-Ohio-969, 862 N.E.2d 478, ¶ 27 (2007). She was actively, repeatedly, serving patrons of the establishment. *State ex rel. AT & T, Inc. v. McGraw*, 120 Ohio St.3d 1, 2008-Ohio-5246, 895 N.E.2d 842, ¶ 23. Her activities were not minimal, but were "physically demanding and more than passive," also "greater than being a 'mere presence,' * * * given the physical and broad nature of her tasks." *State ex rel. Dunlap v. Indus. Comm.*, 10th Dist. Franklin No. 16AP-101, 2016-Ohio-8131, ¶ 11. In fact, her "actions were that expected of a typical employee." *Id.*

{¶38} We also cannot concur with appellant's argument that she somehow did not realize her work at the pub was in contravention of the terms of her temporary total compensation. At the point of the investigations, appellant had received temporary total compensation for a significant length of time. The C-84 dated February 25, 2014 is not the first such form she signed and she patently attested that she was not "working" when she plainly was.

{¶39} Finally, appellant argues for the first time on appeal that she did not commit theft because Aramark was never "deceived:" the company was aware appellant was

"working" because it initiated the investigation into her activity. Appellant's position is that rather than investigate the potential fraud, Aramark should have stopped payments to appellant "and resolved the matter by application with the bureau or commission." We disagree with the underlying premise that an employer has no recourse in pursuing a fraud investigation.

{¶40} Further, appellee responds that appellant failed to raise this argument in the trial court and may not raise it for the first time on appeal. Other courts have found that if a defendant sets forth specific grounds in her motion for judgment of acquittal, she forfeits review of all grounds not specified. *State v. Harris*, 1st Dist. Hamilton No. C-160279, 2017-Ohio-5594, --N.E.3d--, ¶ 32, citing *State v. Cayson*, 8th Dist. Cuyahoga No. 72712, 1998 WL 241949, *2 (May 14, 1998); *see also State v. Swanner*, 4th Dist. Scioto No. 00CA2732, 2001 WL 548719 (May 18, 2001); *State v. Payne*, 8th Dist. Cuyahoga No. 92976, 2010-Ohio-2459, 2010 WL 2203012, ¶ 15; *State v. Pruiett*, 9th Dist. Summit No. 21889, 2004-Ohio-4321, 2004 WL 1837036, ¶ 26.

{¶41} We prefer to address appellant's argument on the merits and find it to be unavailing. "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact. R.C. 2913.01(A). A trier of fact can determine intent from the surrounding facts and circumstances. *State v. Dillon*, 10th Dist. Franklin No. 05AP-679, 2006-Ohio-3312, ¶ 22, citing *State v. Seiber*, 56 Ohio St.3d 4, 13-14, 564 N.E.2d 408 (1990); *State v. Drayer*,

159 Ohio App.3d 189, 2004-Ohio-6120, 823 N.E.2d 492, ¶ 9 (10th Dist.) Appellant's insistence that she was unaware of her ineligibility for the workers' compensation benefits she received is contradicted by "a plethora of circumstantial evidence proves otherwise." *Id.* Her deception is the basis upon which Aramark paid her over $10,000 in benefits to which she was not entitled.

{¶42} The inferences appellant asks us to make are not supported by the record. We find instead there is substantial evidence from which the jury could conclude all of the elements of workers' compensation fraud and theft were proven beyond a reasonable doubt. Additionally, upon our review of the entire record, including the video evidence and the C-84 signed by appellant, we have weighed the evidence and all reasonable inferences, considered the credibility of witnesses and determined that the jury did not clearly lose its way. Nor does this case represent such a manifest miscarriage of justice that the convictions must be overturned and a new trial ordered.

{¶43} Appellant's two assignments of error are overruled.

**CONCLUSION**

{¶44} Appellant's two assignments of error are overruled and the judgment of the

Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Wise, John, J. and

Baldwin, J., concur.