THE STATE EX REL. GRIFFITH, APPELLEE, *v.* INDUSTRIAL
COMMISSION OF OHIO, APPELLANT, ET AL.

[Cite as *State ex rel. Griffith v. Indus. Comm.,*
109 Ohio St.3d 479, 2006-Ohio-2992.]

(No. 2005–1070—Submitted March 14, 2006—Decided June 28, 2006.)

**Per Curiam.**

{¶ 1} In the case at bar, we are asked to consider whether certain activities performed by appellee, Edward G. Griffith, from December 17, 2001, through August 21, 2002, are inconsistent with his receipt of temporary total disability compensation during that period. He sustained an industrial injury on December 14, 2001, and a workers' compensation claim was allowed for a sprained sacroiliac and a bilateral sprained hip and thigh. Temporary total disability compensation began on December 17, 2001, because of his employer's lack of work within his light-duty restrictions.

{¶ 2} In March 2002, the Bureau of Workers' Compensation received a tip that Griffith might be working at a body shop that was later identified as Frank's Auto Body & Restoration. A bureau investigator interviewed Frank Latin, the business owner, on two occasions, once in late 2002 and once in early 2003. Latin indicated that Griffith was an old high-school friend who had hung out at the shop during his off hours for years. The investigator presented Latin with photocopies of two checks from Frank's Auto Body and Restoration, Inc. Both were made out to cash, signed by Latin, and endorsed by Griffith. The first was dated December 29, 2001, in the amount of $288. The second was written on January 24, 2002, for $280.

{¶ 3} Latin indicated that the first check represented payment for work in constructing a six-foot by five-foot compressor room in November or December 2001. Latin indicated that Griffith worked approximately three to four hours a day, two to three days a week, for two to three weeks. The second check was for help in answering shop phones, driving cars, and putting away tools. It was not

made clear when this work was done, but it apparently involved about the same amount of time as the other.

{¶ 4} Griffith testified that the construction of the compressor room consisted of erecting two walls and a roof and was completed by December 7, 2001—before his industrial injury and receipt of temporary total disability. He also confirmed Latin's description of the duties encompassed by the second check, but he claimed he worked only during the first two weeks of January 2002.

{¶ 5} On April 22, 2003, the bureau requested that appellant, Industrial Commission of Ohio, declare fraud as well as an overpayment for temporary total disability compensation paid between December 17, 2001, and August 21, 2002. A staff hearing officer granted the motion because Griffith "worked for a portion of this period and retained the ability to continue with such work activity." The "work activity" identified by the hearing officer was answering phones and running errands. The staff hearing officer never declared these activities to be inconsistent with Griffith's purported inability to return to his former job or his medical restrictions, nor did the hearing officer cite medical evidence of any inconsistency. He did note that Griffith assisted in some roofing work six weeks *after* temporary total disability compensation ceased and extrapolated that if Griffith could do that, he was capable of doing that type of work months earlier. The hearing officer again did not cite any medical evidence supporting this conclusion.

{¶ 6} After Griffith exhausted his administrative remedies, he requested a writ of mandamus from the Court of Appeals for Franklin County. The court of appeals found that the commission's order was based purely on speculation and that there was no evidence supporting the inferences drawn by the commission. It issued an order vacating the commission's declaration of overpayment from December 17, 2001, through August 21, 2002. It then ordered temporary total disability compensation to be paid from December 17, 2001, through December 29, 2001, and January 25, 2002, through August 21, 2002. It is unclear what its intended disposition was for the period December 29, 2001, through January 24, 2002.

{¶ 7} This cause is now before this court on an appeal as of right.

{¶ 8} There is confusion over the time period that demands merit review. Griffith concedes some overpayment, but the extent of the concession is unclear, stated at one point as December 19, 2001, through January 24, 2002, and at another as December 29, 2001, through January 24, 2002. At a minimum, overpayment from December 29, 2001, through January 24, 2002, is admitted, limiting review over that span to the question of fraud. As explained below, the commission must further consider that question, as well as the period December

17, 2001, through December 29, 2001. Any future judicial review would be aided by a clarification of the overpayment period not contested by Griffith.

{¶ 9} For the remaining period—January 25, 2002, through August 21, 2002— our analysis opens with our recognition that the commission, as sole evaluator of the weight and credibility of evidence, is undeniably entitled to draw inferences from the evidence before it. The problem here, however, is that the finding of overpayment relies *exclusively* on inference without any underlying evidentiary support.

{¶ 10} Under the present facts, temporary total disability compensation could be declared overpaid in one of two ways. Temporary total disability compensation cannot be paid if Griffith was "working," i.e., exchanging labor for pay, regardless of whether that work was within Griffith's medical restrictions. *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586; *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880. Temporary total disability compensation also cannot be paid if Griffith was doing activities medically inconsistent with his purported inability to return to the former job, even if done for free. *State ex rel. Parma Community Gen. Hosp. v. Jankowski*, 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143.

{¶ 11} There is no evidence that Griffith did anything from January 25, 2002, through August 21, 2002, that would preclude temporary total disability compensation. There is no evidence that he did any activity inconsistent with his medical restrictions or the inability to return to his former job. There is no evidence that he was paid for any activity. Instead, the staff hearing officer relied solely on his subjective belief that if Griffith worked in January 2002, he retained the ability to continue to work through August of that year.

{¶ 12} This reasoning is tenuous. Griffith's ability to engage in work activity between December 19, 2001, and January 24, 2002, is relevant to the period after January 25, 2002, only if the activity conflicts with his medical restrictions and his purported inability to return to his former job. The commission never made that finding. Moreover, the only two activities enumerated in the commission's order—answering phones and running errands—are not incompatible with Griffith's light-duty restrictions.

{¶ 13} The commission's order refers to a September 30, 2002 office note from a physician that reported that Griffith did some roofing work the prior weekend. Griffith, however, was no longer receiving temporary total disability compensation at that time. We also cannot endorse the commission's presumption that if Griffith could do roofing work in late September 2002, he could have done that work at least six weeks earlier. It is an abuse of discretion for the commission to make retrospective determinations of disability without supporting medical evi-

dence. We find a lack of evidence supporting ineligibility for temporary total disability compensation from January 25, 2002, through August 21, 2002. Griffith was not, therefore, overpaid during that period. This, of course, moots any question of fraud over that period as well.

{¶ 14} On the issue of fraud prior to January 25, 2002, further consideration by the commission is necessary. Besides the confusion as to the period of conceded overpayment, much of the commission's fraud finding was based on what it believed to be a continuing course of deception by Griffith. That reasoning, however, has lost a great deal of support with the determination that Griffith did nothing inconsistent with his receipt of temporary total disability compensation between January 25, 2002, and August 21, 2002.

{¶ 15} We therefore order the commission to reconsider the issues of overpayment and fraud from December 17, 2001, to January 25, 2002, and to issue an amended order. The judgment of the court of appeals is affirmed as to the period beginning January 25, 2002.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

————————

Dworken & Bernstein Co., L.P.A., and Jonathan T. Stender, for appellee.

Jim Petro, Attorney General, and Derrick L. Knapp, Assistant Attorney General, for appellant.