THE STATE EX REL. HONDA OF AMERICA MANUFACTURING COMPANY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Honda of Am. Mfg. Co. v. Indus. Comm.*, 113 Ohio St.3d 5, 2007-Ohio-969.]

(No. 2005–2006—Submitted January 9, 2007—Decided March 21, 2007.)

Per Curiam.

{¶ 1} While receiving temporary total disability compensation, appellee Edith K. Anderson opened a scrapbooking shop with proceeds from her husband's life insurance. Over a three-month period, she was observed in the shop five times. Her employer, appellant Honda of America Manufacturing Company, alleged that her store-related activities constituted "work." It therefore requested the termination of her temporary total disability compensation and a declaration of overpayment and fraud. We must determine whether the commission abused its discretion in denying those requests. Upon review, we find that it did not.

{¶ 2} Anderson was injured while working for the company and began receiving temporary total disability compensation in 1991. Her husband died in 2002, and she decided to invest the insurance money in a small business, My Crop Shop, which opened on February 13, 2003. My Crop Shop specializes in scrapbooking and in preserving media. It is largely a family undertaking, with Anderson's son and two daughters working there, in addition to a manager and

other employees. Anderson visits the store "from time to time" to check its progress.

{¶ 3} These visits ultimately drew Honda's attention, and in April 2003, a private firm hired by Honda began to investigate Anderson's activities. Surveillance was conducted on five dates: April 24, April 25, May 6, May 8, and June 30, 2003. On each of these days, Anderson went to My Crop Shop. On April 24, she was observed speaking on the phone inside the store. The next day, she was seen once using the cash register. On both days, Anderson's daughter was also working in the store.

{¶ 4} On May 6, an investigator, posing as a customer, entered the store. Anderson showed him several displays of Mother's Day gifts and also spoke with another customer, describing classes offered by the store. On May 8, she showed an undercover investigator several sample scrapbooks and answered questions about them. On June 30, Anderson was observed in the store, with no particular activities noted.

{¶ 5} Honda gave the surveillance videos to Dr. Oscar F. Sterle for review. He opined that Anderson's activities contradicted attending physician William W. Nucklos's opinion of her physical capabilities. Dr. Sterle did not, however, conclude that the activities were inconsistent with her claim that she could not return to her former position of employment as an assembly-line worker.

{¶ 6} Dr. Nucklos responded strongly on September 23, 2003:

{¶ 7} "After treating this patient for more than 10 years, it is my medical opinion that there is absolutely nothing on the tape that is inconsistent with this patient's physical capabilities as performed in my office. Regarding the issue of bending, I clearly stated in my restrictions dated 5–22–2003 that this patient could occasionally squat or bend. In fact, in the video, she is not actually reaching to the ground, but she is retrieving some keys that had fallen between the frame of the car and the seat. This is further supported by the fact that the patient does three or four mini-bends of a low degrees [sic] while flexed, which would not have been necessary were her keys on the ground. In fact, she actually had something in her left hand and retrieved the keys with her right hand.

{¶ 8} " * * *

{¶ 9} "Based on what the patient has told me about her involvement in her store, I did not see anything that was inconsistent with the restrictions. First of all, I viewed the 43–minute tape in its entirety, and it appears that regarding the video surveillance of [the five taped days] the patient was only in the store for approximately 10 hours. Even if we take the view that she was in the store for eight hours per day on the five surveillance days, that would only be 40 hours

over a period of essentially nine weeks. However, the total hours worked would be 40 hours, which is absurd. The fact is that the patient was in the store for a total of 10 hours. Furthermore, the number of work hours permitted per restrictions would have been 90 to 180 hours over a nine week period. According to my restrictions, I indicated on 5–22–2003 that the patient could work two to four hours per day five days per week and increase as tolerated over a 90–day period.

{¶ 10} " * * *

{¶ 11} "Regarding the issue of how much the patient can lift, I actually weighed her tote bag, which she has brought to this office on more than one occasion and in which she generally carries her remote controls for her spinal cord stimulators X two, and it weighs 1.25 pounds, and the purse viewed in the video, which she also carries on a regular basis, weighs 2.75 pounds, a total of 4 pounds.

{¶ 12} " * * *

{¶ 13} "In closing, Ms. Anderson is in my top ten regarding honesty and integrity. This is supported by the fact that she told everyone, including her case manager, her attorney, and me, that she, in fact, owned a store. She also indicated to me that from time to time she would go in the store. Her biggest fear at all times was that she would not be able to perform any job duties that she loved on a consistently predictable basis.

{¶ 14} "Another observation centered around the fact that when she was summoned from the back of the store where she was resting, because a gentleman had portrayed himself as a baseball coach requested to see the owner, she did her very best to accommodate him, even though it was clear that as time wore on on 5–8–2003[,] she was visibly tired and was actually sitting on a table and resting on, of all things, gum ball machines, and appeared in pain based on her body language."

{¶ 15} Honda asked appellee Industrial Commission of Ohio to terminate temporary total disability compensation and issue declarations of overpayment and fraud. Anderson countered with, among other things, a letter from the shop's accountant. The letter indicated that Anderson had received no payroll checks from the store and that she had not "been paid to do any work for this establishment."

{¶ 16} A staff hearing officer denied Honda's motion in a lengthy order. He found no evidence that the claimant was medically capable of returning to her former job. He also concluded that Anderson had not been remunerated for activities at My Crop Shop. In addressing this issue, the hearing officer applied the two-pronged test from *State ex rel. Ford Motor Co. v. Indus. Comm.,* 98 Ohio

St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016, determining that the taped activities were minimal and did not generate business income directly. Accordingly, Anderson was not disqualified from temporary total disability compensation.

{¶ 17} The order was administratively affirmed, and Honda proceeded to file the instant mandamus claim in the Court of Appeals for Franklin County. Applying *Ford,* the court of appeals upheld the commission's order and denied a writ of mandamus, prompting Honda's appeal to this court as of right.

{¶ 18} Temporary total disability compensation cannot be paid to a claimant who is actually working—i.e., exchanging labor for pay—or to one who is medically capable of returning to the former position of employment. R.C. 4123.56(A); *State ex rel. Griffith v. Indus. Comm,* 109 Ohio St.3d 479, 2006-Ohio-2992, 849 N.E.2d 28, ¶ 10. Consequently, activities that are medically inconsistent with the alleged inability of a claimant to return to the former position of employment bar temporary total disability compensation even if done for free. *State ex rel. Parma Community Gen. Hosp. v. Jankowski,* 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143. Conversely, activities done for pay, even activities consistent with medical restrictions, also foreclose temporary total disability compensation. Id.

{¶ 19} There is no evidence that Anderson's activities at My Crop Shop were medically inconsistent with her assertion that she could not return to her former position of employment as an assembly-line worker. Our focus, therefore, is on the issue of remuneration and our holding in *Ford,* 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016.

{¶ 20} In *Ford,* Christopher D. Posey had a full-time job at Ford Motor Company and also owned a lawn-care business. In 1998, Posey was hurt at Ford and began receiving temporary total disability compensation. His injury also affected his ability to do lawn work, forcing him to hire more employees to cover his former share of the workload.

{¶ 21} Posey's involvement with his business while receiving compensation prompted Ford to seek a declaration of overpayment. Ford alleged that Posey's participation in his business constituted work and prohibited temporary total disability compensation. Evidence regarding Posey's postdisability participation in his business, however, established only that Posey signed his four workers' paychecks and, on a few occasions, fueled and drove riding lawnmowers onto a truck. Posey did no landscaping work in connection with his business while receiving temporary total disability compensation.

{¶ 22} The commission upheld Posey's receipt of compensation:

{¶ 23} " 'The evidence supports the claimant's contention that he withdrew from nearly all business activities except those necessary to preserve the business

until he was physically able to return to it. The Staff Hearing Officer does not believe [that *State ex rel.*] *Nye* [*v. Indus. Comm.* (1986), 22 Ohio St.3d 75, 22 OBR 91, 488 N.E.2d 867] and [*State ex rel.*] *Durant* [*v. Superior's Brand Meats, Inc.* (1994), 69 Ohio St.3d 284, 631 N.E.2d 627] prevent the meager activities engaged in by the claimant nor do they require a self-employed individual to relinquish even that control which is absolutely necessary to preserve the existence of his pre-existing enterprise.'" *Ford*, 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016, ¶ 14.

{¶ 24} We agreed. Distinguishing several cases,[1] we held that Posey's activities "did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept *his employees* doing the tasks that generated income." (Emphasis sic.) Id. at ¶ 23. We concluded, however, on a cautionary note:

{¶ 25} "Obviously, application of this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a façade of third-party labor to hide the fact that he or she is working. In this case, however, claimant's activities were truly minimal and only indirectly related to generating income." 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016, ¶ 24.

{¶ 26} Honda challenges *Ford*'s applicability, arguing that, unlike Anderson's, Posey's business preexisted both injury and disability. We find this distinction inconsequential. Honda's position would require us to craft two separate tests for the same issue based solely on the timing of the secondary enterprise. Any such dichotomy would be pointless.

{¶ 27} Applying *Ford* to these facts, we begin by examining Anderson's activities and the commission's determination that they were minimal. The commission emphasized that over a three-month period, Anderson was viewed just five times. On three of those occasions, she assisted no customers. On the other two, she apparently helped a single customer by answering questions and pointing out displays and once used the cash register for an unknown purpose. This was the sum total of her observed activities at My Crop Shop.

{¶ 28} Honda challenges this conclusion, asserting that if Anderson was involved with My Crop Shop on each day of surveillance, she was probably involved with the store on the days she was not observed. This assertion fails for two reasons. First, Anderson's mere presence at the store is not itself disqualifying. Moreover, even if she arguably was engaged in some business activity every

---

1. *State ex rel. Nye v. Indus. Comm*, supra; *State ex rel. Blabac v. Indus. Comm.* (1999), 87 Ohio St.3d 113, 717 N.E.2d 336; *State ex rel. Durant*, supra; *State ex rel. Johnson v. Rawac Plating Co.* (1991), 61 Ohio St.3d 599, 575 N.E.2d 837.

time she was seen, the commission—as sole evaluator of evidentiary weight and credibility—was not compelled to conclude that she was doing the same thing when not observed. Accordingly, the commission's determination that Anderson's activities were minimal will not be disturbed.

{¶ 29} *Ford* also questions whether Anderson's activities generated income directly. The commission found that Anderson's activities—to the extent that they generated any income at all—did so only secondarily because they were geared more towards promoting the goodwill of the business. We again defer to that finding. Most of the disputed activities consisted of answering customer questions. Certainly, Anderson cannot be required to ignore customer inquiries in order to maintain eligibility for compensation. That would indeed destroy the business's goodwill. As to the operation of the cash register, it occurred just once, without any evidence that it was connected to a sale, and does not justify termination of Anderson's temporary total disability compensation. Accordingly, given the lack of evidence that Anderson's business involvement was any more extensive, we uphold the commission's determination. This, in turn, moots any issue of fraud, because compensation was properly paid.

{¶ 30} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

––––––––––

Vorys, Sater, Seymour & Pease, Robert Minor, and Sebastian E. Proels, for appellant.

Larrimer & Larrimer and Thomas L. Reitz, for appellee Anderson.

Marc Dann, Attorney General, and Elise Porter, Assistant Attorney General, for appellee Industrial Commission.