[Cite as *State ex rel. Holbrook v. Indus. Comm.*, 2024-Ohio-3375.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Kenneth G. Holbrook,  :

      Relator,  :

v.  :      No.  22AP-422

      :

Industrial Commission of Ohio et al.,  :      (REGULAR CALENDAR)

      :

      Respondents.  :

      :

---

D E C I S I O N

Rendered on September 3, 2024

---

**On brief:** *Patrick J. Moro*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

BEATTY BLUNT, J.

{¶ 1}   Relator, Kenneth G. Holbrook, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order that terminated permanent total disability ("PTD") compensation as of August 19, 2016, and ordered an overpayment of PTD compensation from July 28, 2008, to the present based on a finding of fraud.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.  The magistrate considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found there was some evidence in the record supporting respondent's order terminating PTD compensation as of August 19, 2016.  The magistrate further found there was some evidence in the record supporting respondent's order finding

an overpayment of PTD compensation from July 28, 2008, to the present based on a finding of fraud.  Accordingly, the magistrate recommended this court deny relator's request for a writ of mandamus.

{¶ 3}  No objections have been filed to the magistrate's decision.  "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c).

{¶ 4}  Upon review, we have found no error in the magistrate's findings of fact or conclusions of law or other defect evident on the face of the magistrate's decision. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and the conclusions of law therein, and conclude that relator has not shown he is entitled to a writ of mandamus and therefore his request for same is denied.

*Writ of mandamus denied.*

MENTEL, P.J. and BOGGS, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Kenneth G. Holbrook,              :

      Relator,                                      :

v.                                                              :             No.  22AP-422

Industrial Commission of Ohio et al.,         :         (REGULAR CALENDAR)

      Respondents.                               :

                                   :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 16, 2024

*Patrick J. Moro*, for relator.

*Dave Yost,* Attorney General, and *Cindy Albrecht,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

**{¶ 5}** Relator, Kenneth G. Holbrook ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that terminated permanent total disability ("PTD") compensation as of August 19, 2016, and ordered an overpayment of PTD compensation from July 28, 2008, to the present based on a finding of fraud.

Findings of Fact:

**{¶ 6}** 1. On July 7, 1988, claimant sustained an injury in the course of and arising out of his employment with Sunfall Enterprises Inc. His workers' compensation claim was allowed for the following conditions: sprain left knee; left medial tear; osteoarthrosis lower

leg, left; depressive disorder; right knee sprain; right knee medial meniscus tears; and right knee lateral meniscus tears.

{¶ 7}   2. Claimant was subsequently employed by Kenneth Holbrook D/B/A Ken Holbrook Carpentry & Painting ("employer").

{¶ 8}   3. On February 12, 1999, claimant sustained an injury in the course of and arising out of his employment with the employer. The claim was allowed for sprain lumbosacral and bilateral sciatica.

{¶ 9}   4. On December 4, 2007, claimant filed an application for PTD compensation.

{¶ 10}  5. The matter was heard before a staff hearing officer ("SHO"), on July 28, 2008, and the SHO issued an order granting PTD compensation.

{¶ 11}  6. On July 15, 2021, the Ohio Bureau of Workers' Compensation ("BWC") filed a motion requesting the following: (1) declare any and all PTD compensation paid to claimant from July 28, 2008, to the present overpaid; (2) terminate PTD compensation effective August 19, 2016; and (3) declare claimant committed fraud, in that he concealed his employment during the period to receive PTD compensation.

{¶ 12}  7. A hearing was held before an SHO, and on March 11, 2022, the SHO issued an order granting the BWC's motion and finding the following: (1) there is continuing jurisdiction to address allegations of fraud in the July 15, 2021, motion; (2) the BWC has offered evidence of fraud, and continuing jurisdiction is granted; (3) claimant became capable of work activities inconsistent with the grant of PTD; (4) on August 19, 2016, claimant was on site at the KT Scooter Rentals' tent at the Darke County fairgrounds in Greenville, Ohio, and was observed and recorded interacting with customers, collecting payment, and preparing scooters for rental, as part of running a mobility-scooter business; (5) claimant demonstrated that he was fully capable of dealing in a cordial and informative manner with customers; (6) this activity is inconsistent with the findings of the SHO at the July 28, 2008, hearing; (7) after the July 28, 2008, hearing, the SHO: (a) found claimant was permanently and totally disabled due to psychological conditions related to two claims; (b) found claimant was capable of performing sedentary employment when considering his physical conditions; (c) relied upon the March 11, 2008, report from Lee Howard, Ph.D., the November 7, 2006, report from David Lombard, Ph.D., and the February 9, 2006,

report of S. Prasad Sajja, M.D., to find clamant had reached maximum medical improvement ("MMI") for the allowed psychological conditions, and the conditions precluded a return to any form of sustained remunerative employment; and (d) cited to Dr. Lombard's report, which stated claimant has a Class 4 impairment in activities of daily living, social functioning, concentration, persistence and pace, and adaption, and gave a 75 percent impairment rating related to PTD; (8) video evidence presented at hearing shows claimant does not have the impairment to his ability to hold sustained remunerative employment that was present at the PTD hearing; (9) claimant was observed interacting with customers, answering questions, and offering details as to his business and the mobility devices; (10) claimant was able to arrange entrance at the event as a vendor, rent vehicles throughout the day, service vehicles, interact with customers, take in and record payments, and offer instructions; (11) therefore, claimant demonstrated the ability to engage in activities inconsistent with the grant of PTD; (12) the order from the July 28, 2008, hearing also contains language informing claimant that if his condition significantly improves and he is able to work, or does begin working, at any job either full time or part time, he must notify the BWC immediately; (13) claimant did not inform the BWC of his improved condition and his return to work activity; (14) claimant has committed civil fraud, as he had a duty to disclose his ability to run his mobility-device business; (15) these failures to disclose were material to the transaction at hand; (16) claimant's failure to disclose was made with knowledge of falsity or with utter disregard or recklessness as to whether his statements were true or false; (17) claimant had the intent of misleading another in relying upon his statements; (18) the BWC justifiably relied upon claimant's representations or concealments, and this resulted in injury proximately caused by the BWC's reliance upon these representations or concealments; (19) claimant is no longer permanently and totally disabled in either claim as of August 19, 2016; (20) claimant's PTD is terminated as of August 19, 2016; (21) claimant has been overpaid benefits since the termination date; (22) claimant has committed civil fraud; and (23) the overpaid amounts are subject to recoupment pursuant to statute.

{¶ 13}  8. Claimant filed a request for reconsideration, which the commission denied on April 8, 2022.

{¶ 14}  9. On July 13, 2022, claimant filed a petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 15} The magistrate recommends that this court deny claimant's writ of mandamus.

{¶ 16} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 17} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 18} Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Arias v. Indus. Comm. of Ohio*, 49 Ohio St. 3d 76 (1990). In each of its orders granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206 (1991). An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it. *Id.*

{¶ 19} "[T]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings of orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). The commission may exercise its continuing jurisdiction if one of the following prerequisites is met: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or

(5) error by an inferior tribunal. *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14.

{¶ 20} Payment of PTD compensation is inappropriate when there is evidence of (1) actual sustained remunerative employment, (2) the physical ability to do sustained remunerative employment, or (3) activities so medically inconsistent with the disability that they impeach the medical evidence underlying the award. *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 16. "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, ¶ 61. "Work" generally means labor exchanged for pay. *Lawson* at ¶ 19. Remuneration can take the form of a cash payment or a cash-like benefit. *See State ex rel. Alesci v. Indus. Comm.*, 97 Ohio St.3d 210, 2002-Ohio-5932, ¶ 20. "Work is 'sustained' if it consists of an ongoing pattern of activity." *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 15. "[W]ork need not be regular or daily" to qualify as sustained. *Id.* "[I]ntermittent and occasional" or "part-time" work may qualify. *Id.*

{¶ 21} The prima facie elements of fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987), citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus, and *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167 (1984).

{¶ 22} In the present case, claimant's substantive argument consists of six sentences, comprising two general arguments, as follows: (1) "The Order that made a finding of fraud and overpayment was not supported by any case law or legal standard. Rather, the SHO compared the basis of the 7/28/2008 Order that granted permanent total disability compensation in contrast with 'video evidence' of Relator on a particular date and time to conclude that said activities were inconsistent with the grant of permanent total disability"; and (2) "There was no other basis for the SHO's findings. The SHO did not

articulate or cite any definition of fraud other than simply stating that a civil fraud had been committed and his condition had improved. The Order is deficient because it cites no legal basis for its authority to make a finding of fraud nor the standard that finding is based upon. There is not 'some evidence' to support it." (Relator's Brief at 4-5.)

{¶ 23} Initially, claimant does not argue that the commission utilized the wrong legal standard for finding fraud and declaring an overpayment, and the magistrate finds no error. Furthermore, claimant cites no authority for the proposition that the commission must support its orders with or cite case law in order to find fraud or declare an overpayment, and, regardless, the magistrate finds the commission's order does not run afoul of the case law above. Indeed, although the SHO did not cite case law setting forth the elements of fraud, the SHO made factual findings that clearly tracked the specific elements of fraud outlined above. As explained, pursuant to *Noll*, the commission must specifically state in its orders what evidence has been relied upon, make it readily apparent from the four corners of the decision that there is some evidence supporting it, and briefly explain the reasoning for its decision. Here, the SHO's order clearly stated the evidence relied upon in finding claimant committed fraud and explained the reasoning for the decision.

{¶ 24} Although claimant complains that the SHO merely compared the basis of the July 28, 2008, order that granted PTD compensation with video evidence of claimant on a particular date and time to conclude that said activities were inconsistent with the grant of PTD, the magistrate finds no deficiency in this analysis. To be sure, the Supreme Court of Ohio acknowledged the limitation of video surveillance in *State ex rel. AT&T, Inc. v. McGraw*, 120 Ohio St.3d 1, 2008-Ohio-5246:

> [*State ex rel. Honda of Am. Mfg. Co. v. Indus. Comm.*, 113 Ohio St.3d 5, 2007-Ohio-969,] and *Lawson* illustrate a second point -- the importance of the commission's exclusive ability to evaluate evidentiary weight and credibility. Much of the evidence submitted to terminate the disability compensation in these cases was derived from surveillance. Surveillance evidence can be challenging to evaluate because the cost of obtaining it means it is generally limited to a few days of observation. Consequently, resolution often depends on inference: does the evidence suggest a pattern of regular activity or does it imply an isolated occurrence?

*Id.* at ¶ 26.

{¶ 25} However, despite the shortcoming of limited observation, surveillance video can be valuable evidence and is commonly relied upon to demonstrate actual sustained remunerative employment, the physical ability to do sustained remunerative employment, or activities medically inconsistent with the disability. As the Supreme Court explained in *McGraw*, it is within the commission's exclusive authority, as the sole evaluator of evidentiary weight and credibility, to evaluate the surveillance video and determine its value. Here, the SHO detailed the contents of the surveillance video showing claimant working at the county fairgrounds for his scooter-rental business, interacting with customers, answering customer questions, explaining the mobility devices to customers, offering instructions to customers, collecting payments, servicing scooters, and renting scooters, and concluded that the video demonstrated claimant was fully capable of dealing in a cordial and informative manner with customers, and his activities were inconsistent with the PTD finding of July 28, 2008.

{¶ 26} Although claimant complains that the magistrate merely compared the basis of the July 28, 2008, order with the video evidence to conclude that his activities were inconsistent with the grant of PTD, this is precisely the purpose of obtaining surveillance video evidence: To compare whether the activities observed in the video surveillance are medically consistent with the previously determined disability and whether the activities are consistent with the ability to engage in sustained remunerative employment. The SHO in the present case found that claimant's observed activities at the county fairgrounds conflicted with the disability supporting PTD at the July 28, 2008, hearing. The SHO then properly compared the reports of Drs. Lombard, Howard, and Sajja, which all found clamant had reached MMI for the allowed psychological conditions and the conditions precluded a return to any form of sustained remunerative employment. The SHO aptly noted that Dr. Lombard's report determined that claimant had a Class 4 impairment in activities of daily living, social functioning, concentration, persistence and pace, and adaption, and gave a 75 percent impairment rating related to PTD, and found that these conclusions were not consistent with the employment activities claimant was engaging in at the county fairgrounds while running his scooter-rental business.

{¶ 27} As for the fraud finding, the SHO noted the language in the July 28, 2008, order informing claimant that if his condition significantly improves and he is able to work,

or does begin working, at any job either full time or part time, he must notify the BWC immediately; however, claimant did not inform the BWC of his improved condition and his return to work activity. The SHO then applied the facts to the elements of fraud, finding claimant had a duty to disclose his ability to run his mobility-device business, claimant's failure to disclose was material to the transaction at hand, claimant's failure to disclose was made with knowledge of falsity or with utter disregard or recklessness as to whether his statements were true or false, claimant had the intent of misleading another into relying upon his statements, the BWC justifiably relied upon claimant's representations or concealments, and there was an injury proximately caused by the BWC's reliance upon these representations or concealments. Claimant fails to point to any error in the application of the facts to the fraud elements, and the magistrate finds no error.

{¶ 28} Although claimant argues vaguely that there was not some evidence to support the commission's determinations, claimant fails to further expand this argument. The record is comprised of approximately 3,300 pages, about 3,000 pages of which are the Special Investigations Unit Report of Investigation detailing claimant's work activities with his construction business and two scooter businesses. The Report of Investigation includes details of surveillance and undercover operations by special agents spanning numerous dates, as well as financial records, county-fair records, and other records relating to his scooter-rental activities at the county fair. There was some evidence in the record before the commission to support a finding of fraud.

{¶ 29} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.